William A. Kershaw (State Bar No. 057486)
Stuart C. Talley (State Bar No. 180374)
**KERSHAW, COOK & TALLEY PC**
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Facsimile: (916) 721-2501
Email: bill@kctlegal.com
Email: stuart@kctlegal.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY PACIOLLA and JAMIE PACIOLLA,<br><br>Plaintiffs,<br><br>v.<br><br>HOWMEDICA OSTEONICS CORP., d/b/a/ STRYKER ORTHOPAEDICS; and STRYKER CORP.,<br><br>Defendants. | Civ. Action No. _____<br><br>**COMPLAINT FOR DAMAGES**<br><br>(1) Negligence,<br>(2) Strict Liability – Failure to Warn,<br>(3) Strict Liability – Design Defect, and<br>(4) Loss of Consortium.<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, ANTHONY PACIOLLA and JAMIE PACIOLLA ("Plaintiffs"), by and through the undersigned counsel, and hereby submit this Complaint against Defendants, HOWMEDICA OSTEONICS CORPORATION, d/b/a/ STRYKER ORTHOPAEDICS; and STRYKER CORPORATION (collectively, "Defendants" and "Stryker") and allege as follows:

1. This is an action for damages relating to Defendants' development, testing, assembling, manufacture, packaging, labeling, preparing, distribution,

-1-

marketing, supplying, and/or selling the LFIT™ Anatomic V40™ Chromium Cobalt Femoral Head ("LFIT™ V40™").

## I. PARTIES, JURISDICTION AND VENUE

2. Plaintiff, ANTHONY PACIOLLA, is a citizen and resident of Temecula, Riverside County, California. Plaintiff's spouse, JAMIE PACIOLLA, also a resident the state of California, suffered a loss of consortium resulting from the Failure of the LFIT™ V40™ device implanted in her spouse.

3. HOWMEDICA OSTEONICS CORPORATION, d/b/a STRYKER ORTHOPAEDICS, (hereinafter "HOWMEDICA") is a for-profit corporation organized and existing under the laws of New Jersey, with its principal place of business located at 325 Corporate Drive, Mahwah, New Jersey 07430, and conducts business throughout the United States, the State of Florida. Defendant HOWMEDICA is a wholly owned subsidiary of parent corporation, STRYKER CORPORATION.

4. STRYKER CORPORATION is the parent corporation organized and existing under the laws of Michigan, with its principal place of business located at 2825 Airview Boulevard, Kalamazoo, Michigan 49002. Defendant STRYKER CORPORATION conducts business throughout the United States, including the State of California.

5. Upon information and belief, at all times herein mentioned, the employees of Defendants, their subsidiaries, affiliates, and other related entities, as well as the employees of each of the individual Defendant's subsidiaries, affiliates, and other related entities, were the agents, servants, and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendants, such designations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendants committed, knew or, performed, authorized, ratified, and/or directed such

transactions on behalf of Defendants while actively engaged in the scope of their duties.

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between Plaintiff and Defendants.

7. The Court has personal jurisdiction over the Defendants because they purposefully availed themselves of the benefits of doing business here, and the claims relate to their business activities here.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this district and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

## II. DESCRIPTION OF LFIT™ V40™ FEMORAL HEAD

### A. BACKGROUND

9. Upon information and belief, and at all times relevant hereto, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, distribute and/or sell the LFIT™ V40™, either directly or indirectly, to members of the general public within the State of California and throughout the United States, including Plaintiff, ANTHONY PACIOLLA.

10. In a total hip replacement (also called total hip arthroplasty), the natural bone and cartilage is removed and replaced with prosthetic components. The LFIT™ V40™ is part of a hip system that includes a stem, head, and acetabular cup. The natural femoral head is removed, and a metal stem is placed into the femur bone. The stem may be either cemented or "press fit" into the bone. A metal or ceramic ball (head) is placed on the upper part of the stem (called the taper). This ball or head replaces the natural femoral head. The natural cartilage surface of the socket (acetabulum) is removed and replaced with a metal socket, which is sometimes held in place with screw or cement if needed.

11. Components of the hip replacement system vary in size to allow surgeons to select appropriately sized components for the patient.

12. The LFIT™ V40™ femoral head is a modular component of such an interchangeable hip system, available in different diameter sizes ranging from 22 mm to 32 mm, and it is offered in both cobalt chromium alloy and zirconia ceramic.

13. The LFIT™ V40™ head is designed to be locked onto a femoral neck (the taper) portion of the stem.

**B.     THE LFIT™ V40™ HISTORY**

14. On April 11, 2001, Defendants received FDA clearance to market the LFIT™ Anatomic V40™ CoCr (cobalt chromium) Femoral Head, a Class II medical device. This clearance was obtained through the 510(k) process, however, meaning that the FDA never reviewed the device for safety or efficacy.

15. Defendants marketed the LFIT™ V40™ head as a significant advancement in hip bearing technology, claiming that it combines Low Friction Ion Treatment (LFIT™) technology and is anatomically designed to enhance hip stability, minimize dislocation and maximize patient range of motion. Defendants claimed that the benefits in using the metal head include: an increased range of motion, less friction, increases joint stability, decreased risk of dislocation, and reduction in wear.

16. The LFIT™ V40™ head was marketed as compatible with Defendants' Accolade® TMZF®, Secur-Fit Max, Citation TMZF®, Hipstar, Accolade® II, Rejuvenate, AGB II, and most commercially available Stryker femoral hip stems.

17. The prosthetic femoral stems are available in cobalt chromium molybdenum alloy, titanium, and titanium alloy Ti-12Mo-6Zr-2Fc (TMZF®). The TMZF® stems are also sprayed with plasma sprayed ingrowth/on growth coating of PureFix HA. Defendants claim that laboratory testing demonstrates the compatibility of these materials with the LFIT™ V40™, as it was commonly used together, without concern for fretting and corrosion.

-4-
COMPLAINT AND JURY TRIAL DEMAND

18. Despite Stryker's claims, this material combination has been reported to cause fretting and corrosion. In August 2016, an investigative report was published in the Journal of Bone and Joint Surgery. In this report, the authors noted five instances in which patients implanted with the Accolade® stem and LFIT™ V40™ femoral head combination suffered catastrophic failures when their Accolade® stems fractured. Extensive corrosion in the LFIT™ V40™ head and Accolade® stem was reported and was so significant that the stem fractured. In many of the patients, the corrosion caused the release of significant amounts of metallic debris that damaged the surrounding soft tissue. The picture below illustrates a stem that experienced such corrosion to the point where it disassociated from the head. This type of failure harms patients.



19. This device's failure has resulted in multiple recalls worldwide.

**C.  LFIT™ V40™ VOLUNTARY RECALL IN THE UNITED STATES**

20. On August 29, 2016, Stryker sent an "Urgent Medical Device Recall Notification" letter to surgeons that had implanted Stryker LFIT™ V40™ femoral heads manufactured prior to 2011. In the Recall Notice, Stryker stated it had received

higher than expected complaints describing incidences of harm secondary to taper lock failure for specific lots of LFIT™ V40™ heads. The Recall Notice indicated that implanted patients should continue to be followed in accordance with a protocol established by their surgeon and that hospital and surgeons should forward the Notice to all individuals who need to be aware within their organization.

21. The Recall Notice also listed potential hazards of the device, such as "dislocation of the femoral head from the hip stem," "fractured hip stem trunnions," "excessive metallic debris," and "excessive wear debris." The Recall Notice further stated that the listed hazards may result in "revision to alleviate hazardous situation," "inflammatory response," "adverse local tissue reaction," "dislocation," and "periprosthetic fracture." Despite these serious risks, however, the Recall Notice offered no information concerning the cause of the failures or the steps surgeons should take to monitor patients. For example, a simple, inexpensive blood test can inform the patients if they have elevated levels of cobalt, chromium, or titanium in the blood, which is a sign of metallosis and corrosion. There are potentially several hundred thousand individuals with defective LFIT™ V40™ heads whose hips are leaching toxic levels of cobalt and chromium into their bloodstreams, completely unaware that their hips are corroding.

22. On October 11, 2016, Stryker sent an updated recall notification to its customers after identifying additional affected lots of the defective product.

### D. LFIT™ V40™ RECALL IN AUSTRALIA AND CANADA

23. On August 24, 2016, before Stryker's recall in the United States, Canada's public health agency, called Health Canada, mandated a recall of certain models of the LFIT™ V40™ Femoral Head because they had experienced higher than expected taper lock failures.

24. On September 27, 2016, the Australian Department of Health published a Hazard Alert about the risk of injuries related to the LFIT™ V40™ heads, citing the same dangers and warning consumers and health professionals about a higher

COMPLAINT AND JURY TRIAL DEMAND

than expected incidence of failures and injuries related to the LFIT™ V40™.

### E. SUBSTANTIALLY SIMILAR RECALL OF REJUVENATE AND ABG II IMPLANTS

25. This was not the first time Defendants had initiated a recall of hip components with higher than expected failure rates. In 2012, they recalled their Rejuvenate and ABG II modular hip systems after post-market data showed signs of Adverse Local Tissue Reaction due to fretting and corrosion at the modular neck-stem junction. In these systems, the stem and neck were made from different materials. In both hip systems, the stem employed the same TMZF® titanium metal, and the modular necks were manufactured from chromium cobalt. These devices were recalled after reports surfaced indicating excessive device failure due to fretting and corrosion at the stem-neck junction where these metals were joined.

26. The LFIT™ V40™ failure is substantially similar to the Rejuvenate and ABG II device failures. Both systems involve the rubbing of two metal modular components, differing only in their location: the LFIT™ V40™ failure occurring at the head-neck junction and the Rejuvenate and ABG II failures occurring at the stem-neck location.

## III. PLAINTIFF-SPECIFIC ALLEGATIONS

27. On or about February 16, 2012, Plaintiff ANTHONY PACIOLLA underwent a left total hip arthroplasty and was implanted with Defendants' LFIT™ V40 Femoral Head.

28. After the implantation of the LFIT™ V40™, Plaintiff began to experience progressive pain and severe discomfort.

29. On April 7, 2014, Plaintiff underwent revision surgery due to the failed LFIT™ V40™. During the surgery, Plaintiff's surgeon discovered that Plaintiff's hip was corroding and his body was reacting to the cobalt and chromium particles being released from the hip. However, because Plaintiff's surgeon was completely unaware of the defective nature of the LFIT V40 Femoral Head, he replaced it with

another cobalt/chromium V40 Femoral Head.

30. After the April 7, 2014 surgery, Plaintiff continued to suffer from pain and discomfort. Recent blood tests and an MRI have revealed that his hip is again corroding and releasing cobalt and chromium ions into his hip joint. Plaintiff has been told he needs revision surgery to remove his second defective hip.

31. Until a date within 2 years of the filing of this complaint, Plaintiff was unaware that the V40 hip was defective or had been recalled and had no reasonable basis under which to believe he had a claim against defendant. In any event, defendant's fraudulent concealment of the defective nature of its V40 hip means it is estopped from asserting the statute of limitations as a defense in this case.

32. As a direct and proximate result of the Defendants' conduct, Plaintiff suffered and continues to suffer injuries and damages, including but not limited to, past, present, and future physical and mental pain and suffering, past, present, and future medical, hospital, rehabilitative, and pharmaceutical expenses, and other related economic and noneconomic damages.

**IV. CAUSES OF ACTION**

## COUNT I - (NEGLIGENCE)

33. Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows.

34. At all relevant times herein, Defendants designed, selected, inspected, tested, assembled, equipped, marketed, promoted, distributed, labeled and sold the LFIT™ V40™ femoral head to both surgeons and consumers, including the LFIT™ V40™ femoral head device that was implanted in Plaintiff.

35. At all relevant times herein, Defendants had a duty under state law to perform each of these functions reasonably and with reasonable due care for the safety and well-being of patients in whom the devices would be implanted.

36. Defendants failed to use reasonable and due care for the safety and well-being of those in whom the device would be implanted and is therefore negligent in

the following respects:

   a. Defendant failed to adequately design and manufacture the devices to ensure that it would not corrode, erode, deteriorate, and induce severe metal toxicity in patients. The flaws include, but are not limited to:

      i. The incompatibility of the LFIT™ V40™ femoral head with other metal device components, such as the Accolade® TMZF® titanium;

      ii. Use of the TMZF® alloy with a known corrosion and fretting profile inferior to other titanium alloys;

      iii. Poor design of the taper junction between femoral head and neck such that the micro motion was predictable;

      iv. Poor design of the LFIT™ V40™ head such that large head diameters were available resulting in an increased likelihood of dislocation;

      v. Poor design and/or manufacturing practices such that the taper junction between the femoral head and neck do not "fit" as designed and intended;

      vi. Failing to limit the LFIT™ V40™ femoral heads made from cobalt chromium to stems that would not promote or result in fretting and corrosion;

      vii. Not restricting authorized or recommended use of the metals stems, including the Accolade® TMZF® stem to ceramic heads only;

      viii. A combination of the above factors led to heavy metal releases causing adverse tissue reactions, bone necrosis, pain, and premature failure of the device.

   b. Defendants failed to adequately test the LFIT™ V40™ and their combination with other metal devices to ensure that they would not corrode, erode, deteriorate, and induce metal toxicity in the patient;

   c. Prior to marketing the LFIT™ V40™, Defendants failed to conduct anything other than simple, basic bench testing so that when manufactured and marketed, patients became, in essence, Defendants' first clinical trial.

   d. Defendants failed to properly and adequately market the product and represented that the device would not fret or corrode in the human body.

-9-

COMPLAINT AND JURY TRIAL DEMAND

These representations were false and misleading to both surgeons and the consumers;

e. Defendants negligently trained their sales force to detail the device utilizing representations that the Defendants should have known were false, creating in the minds of both surgeons and consumers that the device would not cause metal toxicity;

f. Defendants failed to manufacture the LFIT™ V40™ Femoral Head to Defendants' own internal specifications such that the taper junction between the stem and head prematurely failed causing metal debris cast-off and metal toxicity in patients;

g. Defendants failed to exercise reasonable care in the design or manufacture of the LFIT™ V40™ Femoral Head in that either the taper was poorly designed or manufactured and did not "fit" as intended or the LFIT™ V40™ femoral head was designed or manufactured in such a manner that it did not maintain structural integrity when used with metal stems or when implanted in the body;

h. Defendants failed to adequately test the cobalt chromium components of the LFIT™ V40™ Femoral Head's compatibility with other metal device components such as the Accolade®, or any stem Stryker marketed as compatible with the LFIT™ V40™, in an effort to prevent corrosion and fretting in the device;

i. Defendants failed to act promptly and adequately in response to adverse events reports;

j. Defendants chose these materials to be used in combination as a system at a time when safer, feasible alternative designs and materials were available; and

k. Defendants failed to adequately warn that the LFIT™ V40™ Femoral Head was defective and could lead to patient injury. The warnings that accompanied the LFIT™ V40™ femoral head failed to provide the levels of information that an ordinary consumer would expect when using the LFIT™ V40™ femoral head implant in a manner reasonably foreseeable to the Defendant.

37. It was foreseeable that Defendants' negligence would lead to premature device failure as well as severe injuries.

38. As a direct and proximate result of Defendants' failure to exercise reasonable care and the resulting defective condition of the LFIT™ V40™ device, the LFIT™ V40™ femoral head implanted in Plaintiff caused Plaintiff's injuries. Plaintiff suffered and will continue to suffer severe physical injuries, severe emotional distress, mental anguish, loss of the capacity for the enjoyment of life, medical and nursing expenses, and surgical expenses, and other injuries for which they are entitled compensatory and other damages in an amount to be proven at trial.

39. WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants.

## COUNT II - (STRICT LIABILITY - FAILURE TO WARN)

40. Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

41. At all relevant times herein, Defendants designed, selected, inspected, tested, assembled, equipped, marketed, promoted, distributed, and sold the LFIT™ V40™ femoral head to both surgeons and consumers, including the LFIT™ V40™ femoral head device that was implanted in Plaintiff.

42. Defendants failed to adequately warn that the LFIT™ V40™ femoral head implanted into Plaintiff presented a risk that the product could cause significant harm, including but not limited to heavy metal toxicity, tissue damage, and permanent damage.

43. Defendants failed to adequately warn that the LFIT™ V40™ femoral head implanted into Plaintiff should not be implanted with titanium stems or other metal stems that posed an increased risk of fretting, corrosion, and heavy metal toxicity in patients.

44. The warnings that accompanied the LFIT™ V40™ femoral head failed to provide that level of information that an ordinary consumer would expect when using the LFIT™ V40™ femoral head implant in a manner reasonably foreseeable to the Defendants.

-11-

COMPLAINT AND JURY TRIAL DEMAND

45. Had Plaintiff or Plaintiff's surgeon received a proper or adequate warning as to the risks associated with using the LFIT™ V40™ femoral head implant, Plaintiff would not have been implanted with the product.

46. As a direct and proximate result of Defendants' failure to warn, Plaintiff was implanted with a chromium cobalt Stryker LFIT™ V40™ femoral head and suffered and will continue to suffer severe physical injuries, severe emotional distress, mental anguish, economic loss, and other injuries for which Plaintiff is entitled to compensatory and other damages in an amount to be proven at trial.

47. WHEREFORE, Plaintiff prays for judgment in his favor against Defendants.

**COUNT III - (STRICT LIABILITY - DESIGN DEFECT)**

48. Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

49. At all relevant times herein, Defendants designed, selected, inspected, tested, assembled, equipped, marketed, promoted, distributed, and sold the LFIT™ V40™ femoral head to both surgeons and consumers, including the LFIT™ V40™ femoral head device that was implanted in Plaintiff.

50. Defendants' LFIT™ V40™ was not reasonably safe for its intended use at the time the product left Defendants' control, and the product was expected to and did reach the patient without substantial change in the condition in which it was sold.

51. Integral to the design of the LFIT™ V40™ was its purported compatibility with Defendants' line of stems, manufactured from metals such as titanium and titanium alloy.

52. Defendants' LFIT™ V40™ is designed in such a way that, when used as intended it can causes serious injuries to patients.

53. When combined with stems manufactured by Defendants, the LFIT™ V40™ does not perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable to Defendants.

COMPLAINT AND JURY TRIAL DEMAND

54. Reasonable and adequate alternatives to chromium cobalt femoral heads existed at the time Plaintiff was implanted with the chromium cobalt LFIT™ V40™.

55. The risks of using Defendant's cobalt chromium LFIT™ V40™ femoral head in combination with other metal stems outweighed the benefits of using it.

56. As a direct and proximate result of the LFIT™ V40™'s defective design, Plaintiff suffered and will continue to suffer severe physical injuries, severe emotional distress, mental anguish, economic loss, and other injuries for which Plaintiff is entitled to compensatory and other damages in an amount to be proven at trial.

57. WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants.

## **COUNT IV – LOSS OF CONSORTIUM**

58. Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

59. Plaintiff JAMIE PACIOLLA is, and at all times herein mentioned was, the lawful spouse of plaintiff ANTHONY PACIOLLA.

60. As a direct, legal, and proximate result of the culpability and fault of the Defendants, be such fault through strict liability or negligence, Plaintiff JAMIE PACIOLLA suffered the loss of support, service, love, companionship, affection, society, intimate relations, and other elements of consortium, all to her general damage in an amount in excess of the jurisdictional minimum of this Court.

61. WHEREFORE, Plaintiffs prays for judgment in his favor and against Defendants.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment of the U.S. Constitution.

/ / /

/ / /

-13-

COMPLAINT AND JURY TRIAL DEMAND

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants on each of the above- referenced claims and Causes of Action and as follows:

1. Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to, pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2. Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and earning capacity and other economic damages in an amount to be determined at trial of this action;

3. Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts or gross negligence of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

4. Pre-judgment interest;

5. Post-judgment interest;

6. Awarding Plaintiffs reasonable attorneys' fees when applicable;

7. Awarding Plaintiffs the costs of these proceedings; and

8. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: August 30, 2017.        KERSHAW, COOK & TALLEY PC

By: */s/ Stuart C. Talley*
William A. Kershaw
Stuart C. Talley
401 Watt Avenue
Sacramento, CA 95864
(916) 779-7000
bill@kctlegal.com
stuart@kctlegal.com
*Attorneys for Plaintiffs*